IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| JAMES A. PROVITT, | ) |
| | ) Civil Action No. 2: 19-cv-1624 |
| Plaintiff, | ) |
| | ) United States District Judge |
| v. | ) Marilyn J. Horan |
| | ) |
| SERGEANT TANNER, NURSE | ) Chief United States Magistrate Judge |
| BRENT,[1] AND PHYSICIAN | ) Cynthia Reed Eddy |
| ASSISTANT COWDEN, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

I.   **RECOMMENDATION**

Pending before the Court is the Motion for Summary Judgment filed by Sergeant Tanner and Nurse Brent McShane (hereinafter collectively referred to as the "Corrections Defendants"). (ECF No. 85). After careful consideration of the motion, the material in support and opposition thereto, the memoranda of the parties in support and opposition thereto, the relevant case law, and the record as a whole, it is recommended that the motion be granted in part and denied in part.

II.   **REPORT**

   A.   *Factual Background and Procedural History*

Plaintiff, James A. Provitt, a state prisoner proceeding *pro se*, commenced this action on December 17, 2019, by the filing of a motion for leave to proceed *in forma pauperis*. The motion was granted on December 31, 2019 (ECF No. 2), and the Complaint was filed. (ECF No.

---

[1] Although identified in the Complaint as "Nurse Brent," Defendants subsequently identified this individual as Nurse Brent McShane. The Court will refer to this Defendant as "Defendant McShane" in this Report and Recommendation.

1

4). Mr. Provitt is currently incarcerated at the State Correctional Institution ("SCI") at Phoenix; however, the events giving rise to this action occurred while he was housed in the Restricted Housing Unit at SCI-Fayette. According to Mr. Provitt, on October 30, 2018, "Defendant Tanner victimized him with excessive force in retaliation for making complaints again him and Defendant McShane was deliberately indifferent in providing medical treatment for the injuries sustained as a result of Defendant Tanner's excessive force." Br. at 1. (ECF No. 104). Mr. Provitt has brought claims pursuant to the Eighth Amendment for excessive force against Defendant Tanner and deliberate indifference to his serious medical needs against Defendant McShane, a state tort claim for assault against Defendant Tanner, and a state tort claim for intentional infliction of emotional distress against both Defendant Tanner and McShane.[2]

Following the close of discovery, the Corrections Defendants file on April 2, 2021, a motion for summary judgment, a brief in support of that motion, a concise statement of material facts, and supporting documents. (ECF Nos. 85-88, inclusive). Mr. Provitt filed on September 10, 2021, a brief in opposition, a response in opposition to the statement of material facts, and supporting documents (ECF Nos. 103 and 104), to which the Corrections Defendants filed on September 20, 2021, a Reply Brief. (ECF No. 106). The matter is now fully briefed and ripe for disposition.

---

[2] Through his Complaint, Mr. Provitt also alleges that in February and March 2019, Defendant Tanner would verbally harass or threaten him and kick his cell door. (ECF No. 4, ¶ 26). Although not specifically pleaded as a separate cause of action, to the extent that Mr. Provitt asserts that these actions by Defendant Tanner violated his constitutional rights, such claims fail. Courts have consistently held that a "prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983." *Sears v. McCoy*, 815 F. App'x 668, 670 (3d Cir. 2020) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (explaining that mere threatening language and gestures of a custodial officer are not constitutional violations).

B.      *Exhaustion under the Prison Litigation Reform Act* (PLRA)

Having identified the claims at issue and the factual basis for those claims, the undersigned now turns to the threshold question of whether Mr. Provitt has exhausted the administrative remedies available to him. *See Rinaldi v. United States*, 904 F.3d 257, 264-65 (3d Cir. 2018) (noting exhaustion of administrative remedies is a threshold question).

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002).

The Corrections Defendants argue that Mr. Provitt's claims are barred procedurally by the PLRA because he did not perfect his grievance appeals to final review. Mr. Provitt argues that the appeal process was not available to him.

The United States Court of Appeals for the Third Circuit, in an unpublished opinion, reiterated the analytical structure for a failure-to-exhaust affirmative defense:

> As formulated in this Circuit, the failure-to-exhaust affirmative defense has two distinct stages. The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (explaining that the prison's grievance policy supplies " 'the yardstick' for determining what steps are required for exhaustion" (quoting *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir. 2004))); *see also Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her.[1] *See Rinaldi*, 904 F.3d at 268.
>
> > [1] This order of evaluation is not absolute, and it is permissible to consider the second stage first, *see, e.g., Small,* 728 F.3d at 271-72, but this

> ordering is consistent with the prison-employee defendants bearing the burden of production at the first stage, before the inmate plaintiff inherits the burden at the second.
>
> The state of facts dictates the appropriate legal standard for evaluating the exhaustion defense. If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment. If there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate . . . .

*West v. Emig,* 787 F. App'x 812, 814 (3d Cir. 2019) (non-precedential). Here, because the Corrections Defendants have moved for summary judgment, the analysis turns on whether any genuine issue of material fact exists and whether the Corrections Defendants are entitled to judgment as a matter of law.

No analysis of exhaustion may be made absent an understanding of the DOC Inmate Grievance System Policy, DC-ADM 804, which provides inmates an avenue to seek review of issues involving prison conditions.[3] DC-ADM 804 is built around a multi-tier process:

> The DC-ADM 804 grievance system consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals

---

[3] The Corrections Defendants did not provide a copy of the DC-ADM 804 to the Court, but refers the Court to the PA Department of Corrections website, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf, which Defendants state is the current form of the policy. The date of issue of the policy is April 27, 2015, with an effective date of May 1, 2015.

directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804, § 1(A)(11).

*Hughes v. Hayes*, No. 1: 16-cv-0038, 2018 WL 6697184 at *4 (W.D.Pa. Dec. 20, 2018).

The undisputed evidence of record reflects that on November 6, 2018, Mr. Provitt filed Grievance 769323 concerning conditions on his cell, including that the light in his cell had been out since October 29, 2018;[4] on November 15, 2018, he filed Grievance 771604 about the lack of medical treatment provided for his hand injury, and on December 10, 2018, he filed Grievance 771613 concerning the abuse allegations against Defendant Tanner.

On December 17, 2018, Grievance 771604 was denied on initial review by Stephanie Wood, CHCA, based on her finding that Mr. Provitt received medical care and that the x-ray taken of his hand was negative for fracture. On December 24, 2018, Mr. Provitt appealed to the facility manager. On January 22, 2019, the facility manager denied the grievance, and on March 6, 2019, Mr. Provitt appealed to final SOIGA review. On April 4, 2019, Mr. Provitt's appeal was dismissed by SOIGA because he had failed to submit his appeal within fifteen working days of the facility manager's decision.

After Mr. Provitt filed Grievance 771613, complaining that Defendant Tanner had slammed his hand in the cell aperture and was laughing afterwards with another correctional officer, an internal investigation was conducted into Mr. Provitt's claim of abuse. Mr. Provitt's claims of abuse were determined to be unfounded and no charges warranted as a result of the investigation. On January 15, 2019, this grievance was denied on initial review based on the

---

[4] While this grievance mentions the incident on October 30, 2018, which gives rise to this lawsuit, the focus of the grievance is on the conditions in Mr. Provitt's cell, not on the actions or inactions of any of the Defendants. The grievance was upheld in part/denied in part on November 16, 2018. In the response, it was noted that "staff were sent to your cell on 11/16 to evaluate your issues. All of the issues that you stated were not present. I believe all were taken care of prior to me receiving this grievance." (ECF No. 88-1 at 52).

findings of the internal investigation. Mr. Provitt timely appealed to the facility manager, who denied the grievance on January 30, 2019. On March 6, 2019, Mr. Provitt appealed to final SOIGA review. On April 4, 2019, Mr. Provitt's appeal was dismissed by SOIGA because he had failed to submit his appeal within fifteen working days of the facility manager's decision. Based on the appeals being denied as untimely, the Corrections Defendants argue that these claims have been procedurally defaulted.

Mr. Provitt contends that the appeal process was not available to him. He argues that pursuant to DC-ADM 804 he was entitled to a reasonable extension to file his appeals due to his temporary transfer out of SCI-Fayette to Westmoreland County Jail, yet the Chief Grievance Officer denied his request for an extension. Further, according to Mr. Provitt, the facility manager's decisions were issued while he was temporarily moved out of SCI-Fayette and he did not receive the facility manager's denials of his grievances until his return to SCI-Fayette. Between April 10, 2019 and May 8, 2019, Mr. Provitt sent four letters to SOIGA in response to the final appeal dismissals of Grievances 771604 and 771613. He explained that his appeals were late because there were issues with access to copiers, that he had been temporarily transferred out of SCI-Fayette to Westmoreland County Jail, and that he had moved cells in SCI-Fayette upon his return.

The Corrections Defendants do not dispute that Mr. Provitt had been temporarily transferred to Westmoreland County Jail from January 25, 2019 until February 1, 2019. However, the Corrections Defendants argue that it was Mr. Provitt's responsibility to "adhere to deadlines and to timely follow-up if he believes he is missing documentation," yet he "waited roughly 22 days from the date he returned to his institution to ascertain the whereabouts of his

grievance documents." Reply (ECF No. 106). The undersigned finds the Corrections Defendants' argument to be unavailing.

Mr. Provitt's attempt to comply with the appeal process stands in contrast to those cases where noncompliance has been found to preclude a finding of administrative exhaustion. *See*, *e.g.*, *Keys v. Craig,* 160 F. App'x 125 (3d Cir. 2005) (finding that a prisoner whose administrative appeal was not acted upon because he failed to attach the required documentation had not "substantially complied" with the grievance process when he filed the documents late and with the wrong party); *Rivera v. Pennsylvania Dept. of Corrections,* 2010 WL 339854, No. 09–1009 (W.D.Pa. Jan. 2, 2010) (finding a prisoner did not substantially comply with the prison's administrative procedure where instead of correcting the grievance, the prisoner filed appeals to the Facility Manager and the DOC Secretary's Office arguing that the two page limit was invalid on First Amendment grounds); and *Lee v. Lindsey*, 2009 WL 1076390, No. 4:06-cv-1824 (M.D. Pa. April 21, 2009) (finding a prisoner did not substantially comply with the prison's administrative procedure where he failed to file a grievance on the proper form, was told of this defect, and failed to timely submit an amended grievance).

The summary judgment record reflects that Mr. Provitt contacted SOIGA numerous times in an attempt to explain why his appeal was late. Under these circumstances, the undersigned is reluctant to find that Mr. Provitt has failed to perfect his appeals to final review. Accordingly, the undersigned finds that the administrative process was not available to Mr. Provitt and his failure to exhaust the administrative procedures should be excused.

      C.    *Standard of Review*

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *See id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; Huston, 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants. Where a party is representing himself *pro se*, the complaint is to be construed liberally. A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson,*

477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

With these standards in mind, the undersigned will address the merits of each of Mr. Provitt's clams.

    D.    *Discussion*

        1. <u>Excessive Force Claim against Defendant Tanner</u>

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." *Brooks v. Kyler*, 204 F.3d 102, 105 (3d Cir. 2000). The core inquiry of an excessive force claim is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)). The prisoner need not show significant injury to state an excessive use of force claim. *Hudson*, 503 U.S. at 8. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10.

The version of events offered by Defendant Tanner differs dramatically from the version offered by Mr. Provitt, the non-movant. Mr. Provitt argues that he and Defendant Tanner had argued over whether Mr. Provitt was on restriction which would have forbidden him to have the

9


as hygiene items he was requesting. "Defendant Tanner became irate, began to curse and stormed away from Plaintiff's cell." Br. at 9. Mr. Provitt then summoned Lieutenant Poska, who reviewed the DC-709 Activity Restriction Form and agreed that the restriction on Mr. Provitt had expired and directed Defendant Tanner to provide Mr. Provitt with the requested hygiene items. Defendant Tanner returned to Mr. Provitt's cell, "lifted the clear plexiglass lid to the metal box aperture connected to Plaintiff's cell door, pretended to put the items in it and then slammed the metal sliding door of the metal box on Plaintiff's hand as he reached in." *Id*. In support of his position, Mr. Provitt has included his own Affidavit, as well the Affidavit/Declaration of Alton D. Brown who states that he "observed Sgt. Tanner slam the wicket on Mr. Provitt's hand and laugh about it with C.O. Burnsworth." (ECF 104-2).[5]

Defendant Tanner contends that the cell light in Mr. Provitt's cell was not working properly and did not illuminate Mr. Provitt's cell. As a result, Defendant Tanner accidentally closed the cell aperture on Mr. Provitt's hand. In support of his position, Defendant relies upon the Investigation Report, which includes Defendant Tanner's written statement (ECF No. 88-1 at 11), as well as the grievance filed by Mr. Provitt on November 2, 2018, in which he complains about his living conditions, including no cold water in the sink, no hot water in the shower, and no light in his cell since October 29, 2018. Grievance 7693323, dated 11/2/18 (ECF No. 88-1 at 53).[6]

---

[5] Mr. Provitt indicates that an Affidavit by Bleek Essence is Exhibit C in his appendix, but there was no Exhibit C included in the appendix submitted to the Court. *See* ECF No. 104-1 and 104-2.

[6] In this grievance, Mr. Provitt states: "Also on Oct. 30 Tues, 3:30, my hand was slammed in wicket by Sgt. Tanner his excuse he couldn't see, now I question that but . . . you can clearly see that this is an issue." ECF No. 88-1 at 53.

In short, the fundamental question of whether Mr. Provitt was subjected to an excessive amount of force is a hotly disputed factual matter, requiring credibility determinations. It is the recommendation of the undersigned that these contrasting facts indicate that summary judgment should not be granted on Mr. Provitt's claim of excessive force against Defendant Tanner.

2. <u>Denial of Medical Care Claim against Nurse Brent McShane</u>

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and requires that prisoners receive access to basic medical treatment. *Estelle v Gamble*, 429 U.S. 97 (1976). To succeed on an Eighth Amendment medical needs claim, a prisoner must demonstrate (1) that the defendant showed "deliberate indifference" to his medical needs, and (2) that those needs were "serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017).

Mr. Provitt claims after his hand was slammed in the aperture, he was sent to medical where Defendant McShane took "photographs of Plaintiff's hands and face." Mr. Provitt contends that despite informing Defendant McShane that he was in "excruciating pain and had extreme difficulty in moving his fingers and wrist," Defendant McShane did not "provide any Motrin or Ibrupofen (sic) for pain relief or any ice for swelling. Nor did McShane notify any on call physician . . . ." P's Resp. at 14 (ECF No. 104). In essence, Mr. Provitt is claiming that Defendant McShane was deliberately indifferent to his serious medical needs.

The Corrections Defendants contend Defendant McShane is entitled to summary judgment because the record is devoid of any evidence showing that he was deliberately indifferent to Mr. Provitt's medical needs. They argue that Defendant McShane assessed Mr. Provitt, noted that there were no "obvious injuries or deformity," and instructed Mr. Provitt to follow up with "sick call" as needed.

The undersigned has reviewed the medical evidence of record and finds the following. Mr. Provitt was seen immediately after the incident by Defendant McShane, who at the time examined Mr. Provitt's hand and noted there were "no obvious injuries or deformity." He instructed Mr. Provitt to follow up with "sick call" as needed, which Mr. Provitt did. And as a result, Mr. Provitt was seen and examined two days later, on November 1, 2018, by PA Cowden on November 1, 2018, who ordered an x-ray of his hand.

The record is devoid of any evidence to establish that there was any denial or delay in medical treatment for "non-medical factors." *See Durmer v. O'Carroll*, 991 F.2d 64, 68-69 (3d Cir. 1993). Rather, the record reflects that based on his examination, Defendant McShane determined there were "no obvious injuries or deformity." *See Pearson*, 850 F.3d at 538 (explaining that courts are disinclined to second-guess medical professionals' expertise).

For all these reasons, the undersigned recommends that the Court grant summary judgment on Mr. Provitt's claim against Defendant McShane for deliberate indifference to his medical needs.

        3.    State Law Assault and Intentional Infliction of Emotional Distress Claims

Finally, the Corrections Defendants move for summary judgment on Mr. Provitt's state law claims of assault and intentional infliction of emotional distress on the grounds of sovereign immunity. Mr. Provitt did not address these claims in his response to the Corrections Defendant's motion for summary judgment. However, because a dispositive motion may not be granted merely because it is unopposed, "the Court is required to conduct its own examination of whether granting summary judgment is appropriate." *Fekake v. Lincoln Univ.*, 167 F. Supp. 2d 731, 738 (E.D.Pa. 2001) (citing Fed.R.Civ.P. 56(e)).

Statutory sovereign immunity bars suits against "Commonwealth employees in both their official and individual capacities, so long as the employees are acting with[in] the scope of their duties." *Brautigam v. Farley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010) (internal citations omitted); *see also* 1 Pa.C.S. § 2310.  "Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by employer." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D.Pa. 2010).  Thus, if a Commonwealth employee is acting within the scope of his or her employment when the employee commits a tort, the employee is not amenable to suit unless one of the nine enumerated exceptions to the statutory grant of sovereign immunity applies. *See* 42 Pa.C.S. § 8522(b).  This is true whether the tort is committed negligently or intentionally. *See Mitchell,* 680 F.Supp.2d at 682 ("[W]illful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment . . . ."). None of the nine enumerated exceptions to the statutory grant of sovereign immunity apply in this case.  Therefore, for Mr. Provitt's state law claims to be viable, the evidence must show that the Corrections Defendants acted outside the scope of their employment.

        a.     *Assault Claim against Defendant Tanner*

Under Pennsylvania law, an assault occurs when (a) an actor "'intend[s] to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in immediate apprehension.'" *Renk v. City of Pittsburgh*, 641 A.2d 289, 294–95 (Pa. 1994) (quoting Restatement (Second) of Torts § 21(1) (1965)). Pennsylvania courts have recognized that "an assault committed by an

13

employee upon another person for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment." *Zion v. Nassan*, 28 F.R.D. 247, 267 (W.D.Pa. 2012) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998).

After reviewing the summary judgment record and construing it in the light most favorable to Mr. Provitt, the undersigned finds that Mr. Provitt has presented sufficient evidence from which a reasonable jury could find that Defendant Tanner was acting outside the scope of his employment during his interaction with Mr. Provitt on October 30, 2018. Therefore, the undersigned recommends that the Court deny summary judgment on Mr. Provitt's claim of assault against Defendant Tanner.

### b. *Intentional Infliction of Emotional Distress*

For an intentional infliction of emotional distress claim to be viable under Pennsylvania law, "existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem'l Park*, 527 A.2d 988, 995 (Pa. 1987); *see also Gray v. Huntzinger,* 147 A.3d 924 (Pa. Super. Ct. 2016) ("[O]ur Supreme Court clearly articulated in *Kazatsky* that, to the extent the tort of [intentional infliction of emotional distress] is recognized in this Commonwealth, recovery is limited to those cases in which competent medical evidence of emotional distress is presented by the claimant."). Mr. Provitt has put forth no such "competent medical evidence" to support his claim of emotional distress. Therefore, it is recommended that the Court grant summary judgment on Mr. Provitt's claim for intentional infliction of emotional distress.

## III.   CONCLUSION

For all these reasons, it is recommended that the Motion for Summary Judgment filed by the Corrections Defendants be granted in part and denied in part. It is recommended that summary judgment be granted to the Corrections Defendants all claims against Defendant MsShane and on Mr. Provitt's claim for intentional infliction of emotional distress against Defendant Tanner.   It is further recommended that summary judgment be denied on Mr. Provitt's claims of excessive force and assault against Defendant Tanner.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, Plaintiff, because he is a non-electronically registered party, must file written objections, if any, to this Report and Recommendation by **October 29, 2021**, and the Corrections Defendants because they are electronically registered parties, must file written objections, if any, by **October 26, 2021**.  The parties are cautioned that failure to file written Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections shall have fourteen days from the date of service of objections to respond.

                                          s/ Cynthia Reed Eddy
                                          Cynthia Reed Eddy
                                          Chief United States Magistrate Judge

Dated:  October 12, 2021

cc: JAMES A. PROVITT
FL-4763
SCI Phoenix
1200 Mokychic Road
Collegeville, PA 19426
(via U.S. First Class Mail)

All Counsel of Record
(via ECF electronic notification)